We'll hear argument now in the case of Haiyan Chen v. Barr. Mr. Misucci. Good morning, Your Honors. May it please the Court, I am Thomas Misucci, here on behalf of the petitioner Haiyan Chen. This dispute focuses on a Board denial of a motion to reopen. Ms. Chen filed her motion to reopen in September of 2018. At that time, her history in the United States was as follows. She arrived in the United States in early 2004. Shortly thereafter, became involved with a man. The couple had a child, Aaron, in 2004. The couple married in 2008. They had a second child, Sharon, in 2009. And they went on to work hard and currently own and operate a restaurant. During that period, in April 2010, she came to the attention of immigration officials who put her into removal proceedings. She was in removal proceedings before an immigration judge between that time and July of 2016, when the immigration judge denied all relief. She appealed. The appeal was dismissed. We actually came here to petition that denial, which the Court denied that petition in early 2018. However, in 2018, the U.S. Supreme Court issued its decision in Pereira. And after Pereira, we again looked at Ms. Chen's file. We noticed that the document that DHS – When was the argument you are now making first presented to the Board? We're – well, we're actually – at this point, I'm not really making an argument. I'm just sort of recounting the facts, Your Honor. I'm not – It's – time is very short. You need to make your legal argument. And I'm asking when that argument was first presented to the Board. In our motion to reopen? Well, isn't that a problem? We held in Ortiz-Santiago that the problem identified in Pereira is not jurisdictional, but is a claims processing rule. Correct. And normally, the rule is that a claims processing rule has to be raised at the first opportunity, or it is forfeited. That, indeed, is a holding of our court in Ortiz-Santiago. Understood. So the question I have for you is why it can be raised now. Well, Your Honor, we're not raising a jurisdictional issue, and we didn't raise it – No, no, no, no. Please listen. I'm sorry. Ortiz-Santiago holds that the Pereira problem is not jurisdictional. It's a claims processing doctrine, and therefore must be raised at the first opportunity. It doesn't look like you have made your current argument about the notice to appear at the first opportunity. My question is why it can be raised so late in the case. We raised it in our motion to reopen because it was – Pereira basically changed the legal landscape. No, no. Look, that's not what Ortiz-Santiago held. It didn't say you have to raise it at your first opportunity after Pereira. We held in Ortiz-Santiago that it has to be raised at your first opportunity before the immigration judge. To clarify, Your Honor, even if we're not challenging the jurisdictional status of the charging doctrine? It's not – the holding of Ortiz is that it's not jurisdictional, that the rule of Pereira is a claims processing doctrine, and it's therefore one that must be raised at the first opportunity. That's the holding of Ortiz-Santiago. And I'm trying to figure out how, therefore, you have properly raised this contention that the notice to appear was not proper, that the provision of the later date didn't perfect it, when it wasn't raised at the first opportunity. I probably have a misapprehension as to what Ortiz-Santiago stands for, Your Honor. I was under the impression that the challenge in that case was to the jurisdiction of the immigration court. Well, we're obviously getting nowhere. Let me ask you a different question. What is the current status among the courts of appeals on the question whether the Immigration Board's decision in Mendoza-Hernandez is lawful? We've had Rule 28 letters on recent decisions from the Third and Fifth Circuits. What other decisions are out there? Well, there's the Sixth Circuit case, which essentially tracks the Fifth Circuit case, and then we have the Ninth Circuit case. The Sixth Circuit case came first. The Fifth Circuit case tracked the Sixth Circuit. Correct, correct. The Eleventh Circuit in Molina-Ghion viewed this as so simple it didn't need to be in a precedential order. What else is out there? Is there anything else out there? Well, there was the Ninth Circuit decision, which is currently… That's been vacated. It's been vacated. So among the – you don't know of any other decisions. We have the Third Circuit coming out one way, Five, Six, and Eleven coming out the other way, and that appears to be it for the moment. Correct. Okay. Thank you. Is it your argument that Ortiz-Santiago wouldn't apply because there was a jurisdictional argument addressed there as opposed to the merits? Correct. And the challenge that was raised in Ortiz-Santiago had to do with the validity of the proceedings brought before the immigration judge in the first instance. Right, and as Judge Easterbrook pointed out, we held there that this was a claims processing rule, which could be forfeited, unlike a jurisdictional rule, which couldn't be forfeited. So why wouldn't that same claims processing argument and forfeiture apply in this context? I don't… I know you're talking about a different argument. It's the eligibility for cancellation of removal, but it's based on the same underlying statutory requirement. I must have a complete misapprehension as to the relevance of Ortiz-Santiago to this case, and if that's the case, I apologize. But my clear understanding is that that decision stands for the proposition that jurisdiction, because it is a claims processing rule, jurisdiction cannot be challenged unless it's done timely, but that this is really a non-jurisdictional argument. Are you familiar with the Court's opinion in Chenery? Yes, I am. Is there anything about that that would prevent us from, in this case, making that determination in the first instance rather than sending it back to the Board to decide? I'm not sure, to be perfectly honest with you, Your Honor. Chenery stands for the proposition that the Court has to rely on the reasoning raised by the agency. Correct. The challenge that was made, as I'm sure the Court is aware, was to Mendoza-Hernandez, and I can talk at length about the problems of Mendoza-Hernandez as they relate to this two-step process and how the Board's decision, in our case, as it relies entirely on Mendoza-Hernandez, is in conflict with Pereira, in conflict with Pereira's reading of the statute, which lays out the relationship between the definition of a notice to appear in 1229A and the stop time. I will reserve my two minutes. Certainly, counsel. Good morning, Your Honors. May it please the Court, my name is Julia Tyler, and I represent the government in this immigration case. Your Honors, in the limited amount of time that I have, I would like to discuss the legislative purpose behind the stop time rule. I think we need to be talking about the issues that we have already discussed. Certainly. We need to talk about whether there has been a forfeiture. We need to talk about what the status of this issue is in other places. And then we need to talk about the text of the statute. Certainly. You don't just skip all of those and go straight to your view of legislative purpose. So let's start. Has there been a forfeiture? Of course, your brief doesn't seem to invoke a forfeiture. Well, Your Honor, the board's decision noted that the petitioner was raising, that they raised timeliness. And he was asking timeliness of the argument. The board, and that he was also asking that his time for making that particular argument based on Pereira be equitably stopped. And the board did not reach that issue. Instead, the board assumed for the basis, assumed that it was timely and that there were, even though there were other deficiencies in the motion, that. But the timeliness argument wasn't to the timeliness of raising the issue of the defective notice to appear. It was the timeliness and filing the petition, wasn't it? Yeah. That's a separate issue. We're asking about forfeiture of the challenge specifically to the notice to appear. Because the board did not address that specifically. I think that's the issue, which is that what the board seemed to premise its decision on was, one, the jurisdictional argument, which they felt was resolved by Bermuda's Cota. And then secondly, the actual Pereira stop time rule in that context, which they felt was resolved by Mendoza-Hernandez. And the question there is whether or not the subsequent notice of hearing would cure the defective notice to appear. Not the question of did the petitioner forfeit that argument by not raising it. Precisely. Initially. Precisely. So the board did not address that specific question. That's right. And the question for you is, has petitioner forfeited that argument consistent with what we found in Ortiz-Santiago? Well. By not raising it at the first instance before the immigration court. I believe that that issue has been waived. However, the difficulty under Chenery is that I didn't see that as being a basis for the board's decision. So it's your position, can we address the forfeiture issue since the board did not under Chenery? Chenery, I think, well, Chenery I see as a limitation on what I can argue, not so much on what the court can do. Now, for example, if the court wants to remand it back to the board to consider the timeliness of the argument that was raised with respect to Pereira, and whether or not it actually should be equitably told based on whether or not it could have been raised earlier. This has nothing to do with equitable tolling. I just don't think you are following what this problem is. My apologies, sir. I don't see any forfeiture argument in your brief. I don't have a forfeiture argument in my brief, Your Honor. And that is because I'm wise. It is puzzling to me and perhaps to my colleagues that despite the fact that Ortiz-Santiago holds that objections to the notice to appear are claims processing rules that must be raised in the administrative process, neither side seems to have taken any notice of that. We always hope when we issue decisions that lawyers will actually pay attention to them, but that seems sometimes forlorn. My apologies, Your Honor. The way I view Ortiz-Santiago is as addressing a jurisdictional question. It didn't actually address the Pereira stop time rule on a squarely. And as a matter of fact, the court's decision in Guadalupe said the same thing, which was that this court's decision in Ortiz-Santiago did not directly address the stop time rule in this particular context. All right. Second question. How many courts of appeals have addressed the question whether a notice to appear has to be in one document or can be in multiple documents? The Sixth Circuit addressed it in Garcia-Romo. The Third Circuit, the Ninth Circuit addressed it in Lorenzo Lopez, but that has been withdrawn. It's vacated. It's on re-hearing. Well, we know about the Third Circuit on one hand. We know about the Fifth Circuit, the Sixth Circuit, and the Eleventh Circuit on the other. Are there any others? Not that I'm aware of. I assume this is pending everywhere. I would assume. But those are the only ones that have been issued today. I would assume. I know that my colleagues are briefing this case, this exact situation in every circuit. The Eleventh Circuit is consistent with the Third Circuit, correct? Didn't the Eleventh Circuit find that a subsequent notice could not cure the original NTA? Oh, no. Actually, I don't believe that's true, Your Honor. Actually, the Eleventh Circuit found in Moliere that his December 2005 notice to appear and the March 2006 notice of hearing together fulfilled the notice requirements of 1229A. What about in Perez-Sanchez? Don't tell me the Eleventh Circuit is on both sides of this issue. The 2019 opinion in Perez-Sanchez. Could you refresh my recollection, Your Honor? That's okay. If we need subsequent— Yeah, we'll ask for it. I think these are all unpublished decisions. The Eleventh Circuit has not come out with a published decision? Perez—I think Perez-Sanchez— It would certainly be annoying if the Eleventh Circuit has said, it's so obvious that it comes out this way that we're not publishing, and then said, it's so obvious that it comes out the opposite way that we're not publishing. Well, actually, it's interesting because the Fifth Circuit, after Pierre-Paul, they were issuing numerous unpublished decisions that were consistent with the Sixth Circuit and the Fifth Circuit. And finally, it wasn't until just a few days ago in Yanez-Pena that they actually came out with a published decision extending its finding in Pierre-Paul to this precise stop-time context. And I think the Sixth Circuit, in a footnote, questioned its original decision, how it came out. And actually, I don't want to argue against myself, but in Ortiz-Santiago, this Court—and you were on that panel, I believe, Your Honor— said, we're not sure, actually. We're not so sure that the two-step process is acceptable post-Perera. I think that the Court completely was getting ahead of itself, in a sense, because I do believe that Ortiz-Santiago is entirely consistent with Perera. Again, it was more of a Perera-type decision that did not squarely address the stop-time rule on all fours. Now, the statute. Is there anything in the statute that tells us, one way or the other, how many documents can make up a notice to appear? The simple answer to that is no. However, the stop-time rule refers to receiving a notice to appear— Well, the Third Circuit said the statute appears to use the singular, and that implies that only one document can be used. Well, except that under the Dictionary Act— Yeah, that's a problem. 1 U.S.C. 1, the singular can apply to many things, and even Guadalupe— I understand that, and I understand the Third Circuit didn't mention the Dictionary Act, and that's a problem. Are there any other textual clues in the statute? Well, I'd just like to make one quick point. Actually, Guadalupe mentioned that the Dictionary Act can be applied when it's necessary to carry out the evident intent of the statute. So you were asking me about other things in the statute. The stop-time rule refers to receiving a notice to appear. Again, under the Dictionary Act, that could refer to one or more documents. And then this is the critical language, under 1229A. 1229A refers to written notice, and then a parenthetical is simply alerting people that that's what this thing is going to be called. But 1229A also subsumes sections 1229A1 and A2 and A3. And while A1, A through G, discuss all of the particulars of items that should be in a notice to appear, subsection 2 discusses all of the things that can be changed or altered or supplemented. So when Congress referred to 1229A, first it's referring to written notice, that's written notice in the statute, and it's subsuming A1 and 2 and 3. I think that going quickly back to the Dictionary Act, the important thing about the legislative intent of this is that Congress created the stop-time rule to prevent aliens from continuing to occur in time. I don't understand how we are getting to legislative intent. Well, partially because of the Dictionary Act, Your Honor. There is a text. The Dictionary Act has a context clause, and the Supreme Court held in Roland against California Penal Colony that that means the linguistic context of the statute. It doesn't refer us to the contents of anybody's head. I think to emphasize your point, Your Honor, the Sixth Circuit addressed the issue that we face here directly in Garcia-Romo and said that the stop-time rule was not ambiguous and that its ordinary meaning allows for the government to provide non-citizens with the required categories of information using multiple documents. Okay. Thank you, Your Honors. Thank you, Ms. Tyler. Thank you so much. Anything further, Mr. Masucci? We let Ms. Tyler go over a minute, so we'll add a minute to your time. Thank you. You had asked my colleague about anything in the statute pointing definitively to whether the singular versus the plural nature of the notice to appear. I do know this wasn't in the statute, but in Pereira, the Court notes a colloquy with the Solicitor General regarding the possibility of issuing a notice to appear and the Court responding in a way that strongly suggests that at least what was being discussed there and acknowledged by the government was that it was a singular document. That's at Pereira at page 2119. Finally, I just want to comment briefly on the question of whether or not the government's arguments generally in this case. Thank you, Mr. Masucci. The case is taken under advisement.